UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

LINDA CAMPBELL,                    )
                                   )
                Plaintiff,         )
        v.                         )        CIVIL NO. 2:10-CV-217
                                   )        (MATTICE/CARTER)
MICHAEL J. ASTRUE,                 )
COMMISSIONER OF                    )
SOCIAL SECURITY,                   )
                                   )
                Defendant.         )

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the

final decision of the Commissioner of Social Security denying the plaintiff a period of disability

and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i)

and 423.    This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and

Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding

the disposition of plaintiff's Motion for Judgment on the Pleadings or for Remand (Doc. 9) and

defendant's Motion for Summary Judgment (Doc. 14).

        For the reasons stated herein, I RECOMMEND the decision of the Commissioner be

AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

        Plaintiff was 52 years old at the time her insured status expired (Tr. 19).   She had a ninth

grade education (Tr. 20, 83), and past work as a food server (Tr. 21, 80, 96-103).

### Administrative Proceedings

        Plaintiff seeks judicial review of the Agency's final decision denying her claim for

1

Disability Insurance Benefits (DIB).   This court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff protectively filed an application for DIB on February 16, 2007, alleging disability since December 31, 2000 (Tr. 62-69).   Plaintiff's insured status expired on June 30, 2005 (Tr. 75).[1]   Plaintiff's application was denied initially and upon reconsideration (Tr. 39-44, 48-50). On December 8, 2008, the administrative law judge (ALJ) found that Plaintiff was not disabled because she did not have an impairment or combination of impairments that resulted in significant limitations in her mental or physical ability to perform basic work activities from her alleged onset date through the date she was last insured (Tr. 11-16).   The ALJ's decision became the final decision of the Agency when the Appeals Council denied review (Tr. 1-3). 20 C.F.R. § 404.981. Plaintiff seeks judicial review of the ALJ's decision.

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

---

[1]*To be entitled to DIB, a claimant must show that she was disabled on or before the date her insured status expired.   20 C.F.R. §404.131; Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990)*

1

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

As the basis of the decision of December 8, 2008 that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2005.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2000, through her date last insured of June 30, 2005 (20 CFR 404.1571 *et seq*.

3. Through the date last insured, the claimant had the following medically determinable impairments: obesity, chronic obstructive pulmonary disease, and hypertension (20 CFR 404.1521et *seq*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months. Therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521).

2

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2000, the alleged onset date, through June 30, 2005, the date last insured (20 CFR 404.1520(c)).

(Tr. 13-16).

Issues Raised

Plaintiff asserts the only issue to be determined is whether the Commissioner's decision, that Plaintiff was not under a disability, is correct as a matter of law and supported by substantial evidence (Doc. 10, Plaintiff's Brief at p. 10). In the brief filed in support of her motion, Plaintiff articulates this argument in more detail as follows:

1. Whether substantial evidence supports the ALJ's finding that Plaintiff did not have a severe impairment.

2. Whether substantial evidence supports the ALJ's credibility finding.

3. Whether this court should remand this case pursuant to sentence six of 42 U.S.C. § 405(g).

Relevant Facts

A.    Vocational Background and Plaintiff's Statements

In her disability report, Plaintiff reported she was disabled due to chronic obstructive pulmonary disease (COPD), gastroesophageal reflux disorder (GERD), hypertension, arthritis, and anxiety (Tr. 79). On March 19, 2007, Plaintiff reported that she cared for her personal needs, washed dishes by hand, prepared meals daily, did laundry, did housecleaning, shopped for groceries, watched television, fed birds, sewed, attended three church services a week, handled finances, but could no longer mow (Tr. 88-92). She alleged problems with standing and walking, lifting, squatting, kneeling, climbing stairs, completing tasks and concentrating (Tr. 93). Also on that date, Plaintiff indicated that her back pain began in 1998 (Tr. 104). She reported

3

that, for the past four years, she took Aleve, which helped relieve the pain after about 15 minutes, and it lasted about two hours (Tr. 104). She stated that patches helped ease her lower back pain for a while (Tr. 105). Plaintiff reported she had COPD since 2000, and she experienced shortness of breath and coughed a lot (Tr. 106).

At the hearing (August 2008), Plaintiff testified that she weighed about 250 pounds three years ago (Tr. 22). She testified that in 2004, she had a bone spur, which affected her ability to walk or be on her feet (Tr. 24). She stated that, for the last five or six years, she had swelling in her ankles and feet, which reduced the feeling she had in her feet (Tr. 25). When she was on her feet, her feet swelled and her back, legs, and knees hurt (Tr. 26). She stated that, for at least four years, she had arthritis in her lower back (Tr. 26) with pain going into her legs (Tr. 27).

Plaintiff stated that, for six or seven years, she had problems breathing (Tr. 25). She got bronchitis about twice a year and would be sick for at least three weeks or longer (Tr. 26). Since she worked at the pressing factory, her "hands drop" (Tr. 30). She had problems with irritable bowels for 25 years (Tr. 27). She would get diarrhea about once a week, lasting the entire day (Tr. 27-28). She had problems with reflux, since she was a child, and if she took her medication, it helped (Tr. 28). However, she was not able to get her medication (Tr. 28). Plaintiff testified that she did not have insurance in 2003, 2004, and 2005 (Tr. 29).

She testified that, since 1999, she had problems with nerves (Tr. 30). When she became anxious, she cried (Tr. 33). She also experienced panic attacks (Tr. 34). She said she had three panic attacks in the last year or two, and she had one once before those (Tr. 34). She also complained of depression, which affected her worse at some times more than others (Tr. 33).

Plaintiff testified that she could sit for 15 to 30 minutes then had to get up; it had been this

4

way since she stopped working (Tr. 29).    She thought standing in one place was harder than

sitting, due to low back pain (Tr. 29-30).    She thought she could walk about half a mile on flat

ground (Tr. 31).    She would become short of breath on a hill (Tr. 32).    The heaviest weight she

could lift were dishes and her canner (Tr. 32).    She stated that she sat in a chair in order to work

in her garden (Tr. 33).    She could not do work over her head because it would bother her back

(Tr. 33).    She indicated that she had trouble dressing because she had gained so much weight

and it was hard to move (Tr. 35).    She did all the shopping for the family (Tr. 35).    She said it

was hard to lift anything when she got it off the shelves (Tr. 35).    Plaintiff testified that she

could drive, but did not do so much (Tr. 23).    She prepared meals for herself and husband (Tr.

23).    Her husband was disabled and she stated that he needed her care (Tr. 23).    Plaintiff liked

to sew on a machine (Tr. 23).    She said she had not done any sewing since the winter, since she

was "trying to put what I can up for the winter, you now, canning" (Tr. 35).    She went to

church three times per week (Tr. 23-24).

B.    Medical Evidence

*Treatment Notes from Healthstar Family Physicians (Healthstar)*

Plaintiff received treatment at Healthstar since at least December 1998 (Tr. 156).    Prior to

December 30, 2000, Plaintiff's alleged onset of disability date, Plaintiff had been treated for

hypertension, chronic cough, sore throat, bronchitis, cervical spasm, frequent heartburn,

abdominal pain, chest pain, GERD, uterine prolapse, and depression (Tr. 155-62).    Derek

Cooze, M.D., was Plaintiff's primary care physician at Healthstar (Tr. 158, 162).    Plaintiff also

saw other medical sources at Healthstar.

On March 4, 2000, Plaintiff complained of congestion, coughing, and stuffiness in her head

5

and nose (Tr. 159).   On examination, her only abnormal finding was mild sinus discharge, and she was diagnosed with rhino sinusitis (Tr. 160).

On April 7, 2000, Plaintiff came to the office for a recheck.   Dr. Cooze noted her history of hypertension, and indicated that   she was doing fairly well except for having some troubles with dysphagia (difficulty swallowing).   Dr. Cooze gave refills on Monopril (for hypertension) and referred her to Dr. Chen for evaluation of her dysphagia (Tr 161).

On September 8, 2000, Plaintiff had been doing relatively well since her last visit, but she complained of some trouble with reflux symptoms.   She also indicated chronic fatigue and depressive symptoms.   She was not taking Prevacid or Effexor on a regular basis (Tr. 164). Dr. Cooze discussed that she needed an EGD.   On examination, her vital signs were stable (Tr. 164).   She had some mild epigastric discomfort.   Dr. Cooze diagnosed GERD and depression, and gave Plaintiff refills on her Effexor, Prevacid, and Monopril (Tr. 164).   Between September 2000 and February 2001, Plaintiff received samples and prescriptions for her medication (Tr. 163-64).

On April 4, 2001, Plaintiff called indicating she was having chest and neck pain all week and shortness of breath.   She was told to come in, but Plaintiff indicated she could not, her husband was laid off (Tr. 163).   Plaintiff continued to receive samples or prescriptions for her medication from April to August 2001 (Tr. 163, 166).

According to a treatment note dated September 24, 2001, Plaintiff's husband had lost his job and Plaintiff was having trouble getting medical insurance; she had been out of medicine for the last couple of weeks.   Dr. Cooze noted that Plaintiff's blood pressure was quite elevated. Plaintiff had no complaints, except some depressive symptoms.   She stated that Effexor helped,

6

but she had been out of that for a couple of weeks.    She had no complaints of chest pain or shortness of breath.    Dr. Cooze diagnosed generalized anxiety disorder and hypertension.    He refilled Plaintiff's current medication, except her Prevacid was switched to Protonix (for GERD) for insurance reasons (Tr. 166).

On May 31, 2002, Plaintiff was seen because she had been experiencing tingling in her fingers and hands for the last several weeks.    On exam, it was noted that she was overweight; her vital signs were stable; she had complete range of motion of her head and neck and no cervical spine tenderness; her neurological exam was negative; she had good muscle tone and no neuromuscular deficits of the upper extremities.    She was assessed with intermittent altered sensation of hands, essential hypertension, GAD, menopausal, and GERD.    She was advised to schedule a well-woman examination (Tr. 165).

On June 14, 2002, Plaintiff was seen for a PAP smear and to have a mammogram scheduled.    She indicated she had been gaining weight gradually, and she had started walking two miles a day.    She indicated that had helped and her symptoms had subsided.    Plaintiff indicated she had been depressed for quite some time, but was not getting worse.    On examination, Plaintiff was noted as obese, but in no acute distress.    She had a persistent cough, which she felt was related to allergies.    She was given a prescription for Allegra and told to continue with other medications (Tr. 173).    A bone density scan, performed on July 10, 2002, was normal (Tr. 192).

On October 18, 2002, Plaintiff presented with complaints of headaches, coughing, and right ear pain.    Dr. Cooze diagnosed chronic cough, probably due to Monopril, hypertension, and ear pain; she was given Zyrtec and advised to switch Monopril to Diovan (for high blood pressure).

7

In November and December 2002, Plaintiff was given refills of medications (Tr. 172, 174).

On December 28, 2002, Plaintiff presented complaining of head congestion, sore throat, nausea, chest soreness, coughing, and chills (Tr. 171). On January 2, 2003, Plaintiff came in for a recheck on her bronchitis. She still had a persistent cough and some shortness of breath (Tr. 174). Dr. Cooze gave Plaintiff a tapering dose of Prednisone, Anaplex HD cough syrup, and ordered spirometry testing (Tr. 174). The testing showed significant obstructive disease and Plaintiff was given a Pulmicort inhaler; however, on January 24, 2003, she still had trouble with a persistent cough. At that time, Plaintiff did not complain of any other new problems (Tr. 176). On examination, vital signs were stable, including blood pressure. Plaintiff had normal heart sounds, her chest was clear, and there were no rales or wheezes. Dr. Cooze diagnosed chronic cough (Tr. 176).

On June 4, 2003, Plaintiff complained of bilateral hand numbness for the last few months and gradually worsening. She stated that she did not notice weakness, but had some mild neck pain at times. Dr. Cooze indicated stable vital signs, some minimal cervical spine tenderness, overall good range of motion, slightly diminished grip bilaterally, and trace of peripheral edema. He assessed peripheral edema and possible carpal tunnel syndrome. He gave Plaintiff a trial of Celebrex and told her that, if her symptoms persist, he would order a neurological workup (Tr. 175). A cervical x-ray showed moderate degenerative disc disease at C5-6 and mild to moderate posterior disc space narrowing at C6-7, C7-T1, and to a lesser degree at C4-5 (Tr. 196).

On June 27, 2003, Plaintiff returned complaining of swelling in both feet and rash on both sides of legs (Tr. 178). She was diagnosed with peripheral edema and given medication (Tr. 177). On July 11, 2003, Plaintiff returned for a recheck. Plaintiff admitted to some chronic

8

anxiety and depression secondary to multiple family stressors. Her examination was normal except for 1-2+ edema, but no calf tenderness. Dr. Cooze diagnosed peripheral edema, hypertension, and depression (Tr. 154)

On August 2, 2003, Plaintiff presented with rash, itching, and pain on her right leg for two months (Tr. 152). She had pitting edema and was diagnosed with peripheral edema and venous insufficiency. She was given medication and told to follow up with her primary care physician (Tr. 153).

On August 5, 2003, Plaintiff was having trouble with recurrent peripheral edema and numbness in her legs. On exam of the lower extremity, she had marked edema present and areas of redness bilaterally that were slightly warm to touch. There were no other significant abnormalities. Dr. Cooze diagnosed cellulitis and peripheral edema, and gave Plaintiff Keflex for her rash. On August 7, 2003, Plaintiff reported her rash was not red, but really itching, and she was advised to discontinue Keflex and start Augmentin and Benadryl (Tr. 145).

On September 15, 2003, Plaintiff complained of nonproductive cough, occasional productive cough, diarrhea, hoarseness, and headache (Tr. 150). It was noted that she had previously been diagnosed with COPD and chronic cough. Plaintiff was strongly encouraged to use her medications (Tr. 151).

On October 21, 2003, Plaintiff complained of cough for two months and shortness of breath for one week (Tr. 147). Her diagnosis was COPD with exacerbation (Tr. 148). A chest x-ray showed left lower lobe airspace consolidated with the suggestion of left lung volume loss. A follow-up film in two weeks was recommended (Tr. 195).

On December 17, 2003, Plaintiff returned complaining of coughing for three weeks and

9

shortness of breath (Tr. 142). She was diagnosed with bronchitis and advised to use a home nebulizer and given Omnicef (Tr. 143).

On June 18, 2004, Plaintiff was seen for a recheck. It was noted that she was under quite a bit of stress at times with her father living with her. According to the treatment note, "[s]he is doing relatively well since the last visit." On examination, Plaintiff's vital signs were stable, she was oriented, her chest was clear with good air entry throughout, there were no rales or wheezes, and examination of the left foot showed good pulse with a toenail missing from previous trauma (Tr. 140). Dr. Cooze ordered some lab work and gave Plaintiff refills on her medication (Tr. 140).

On October 8, 2004, Plaintiff complained of shortness of breath, congestion, runny nose, non-productive cough and sneezing. Shanna Pressly, a physician assistant, diagnosed an upper respiratory tract infection. Plaintiff also had a rash on her legs and was diagnosed with eczema. She was given Elidel samples and a prescription for Mucinex (Tr. 140).

On November 18, 2004, Plaintiff complained of left foot pain for two weeks (Tr. 138). She was diagnosed with a heel spur. She was told to use warm compresses, do plantar stretches, and given a prescription for Ultracet (Tr. 139).

On December 6, 2004, Plaintiff complained of hemorrhoids and said she was unable to sit or walk (Tr. 141). Dr. Cooze approved a prescription for Anusol HC, and if no improvement, she was to be seen again (Tr. 141). On January 28, 2005, Plaintiff returned for her hemorrhoid problem (Tr. 136). She also reported diarrhea, with some constipation (Tr. 136-37). She was diagnosed with hemorrhoids and diarrhea and given a prescription for AnaMantle HC and lab testing was ordered (Tr. 137).

10

On April 7, 2005, Plaintiff was seen for complaints of shortness of breath and cough for two to three days (Tr. 134). A chest x-ray indicated COPD (Tr. 200). Her lungs were clear of acute abnormalities (Tr. 200).

According to medical evidence after June 30, 2005, the date Plaintiff's insured status expired, Plaintiff continued to have problems with cough, shortness of breath, and chest pain (Tr. 131-32, 287, 290-91, 298, 310). She continued to obtain medication refills from Healthstar (Tr. 289, 291). On December 23, 2006, a chest x-ray indicated patchy increased density in the right lung, suspicious for early infiltrate; left lung essentially clear (Tr. 278). Plaintiff was diagnosed with acute bronchitis (Tr. 288).

On May 17, 2007, a cervical spine x-ray indicated degenerative disk disease with early cervical spondylosis at C5-6 (Tr. 277). X-rays of Plaintiff's left knee, taken on April 28, 2008, indicated osteoarthritis (Tr. 273).

*Treatment Notes from Helping Hands Clinic*

On February 6, 2007 and March 7, 2007, Plaintiff was seen for complaints of cough and breathing (Tr. 204-05).

*Reports from Consultative Examiners*

On May 21, 2007, Wayne Page, M.D., performed a consultative examination (Tr. 206-10). He took Plaintiff's history, reviewed enclosures and performed a physical examination (Tr. 206). He noted that she reported atraumatic back pain since 1998 and that Dr. Cooze, her family physician, four days earlier, took x-rays and told her she had arthritis (Tr. 206). At that time, Plaintiff indicated she could walk a half mile and carry 20 pounds 20 feet without difficulty (Tr. 206). She described the back pain as an aching spasm pain in the lower and upper back with no

11

numbness, pain or tingling and in to the extremities worse with standing and better with sitting (Tr. 206). She reported hypertension since the 1990s, usually successfully treated by Dr. Cooze (Tr. 206). Plaintiff had a productive cough and had used Singulair for one year and had pending appointment with a pulmonologist (Tr. 206). She reported gastric reflux since her teen years, and indicated Protonix was helpful (Tr. 206). She reported anxiety all of her life, and indicated she had never had counseling and that Dr. Cooze provided prescriptions for Effexor which were helpful (Tr. 206). She reported that she did regular activities in a usual day (Tr. 207). Plaintiff's examination findings were largely normal; she had a normal gait and station; her lungs and pulses were normal in all respects; clinical strength was 5/5 in all groups, muscle condition was normal in all groups, cervical, lumbar, small and large joint range of motion was normal, neurological examination was normal as she had no focal, motor, or sensory deficits or radicular findings (Tr. 209). Dr. Page noted that Plaintiff was obese, at 258 pounds (69 inches), but stated it did not appear to negatively impact function or cause mechanical limitation, dyspnea, or fatigue, and did not adversely affect Plaintiff's ability to walk, sit, stand, move about, turn, twist, bend, or lift (Tr. 209). He diagnosed musuloskeletal back pain; hypertension controlled; alleged COPD with normal examination, minimal treatment; and gastric reflux, controlled (Tr. 209). Dr. Page assessed that Plaintiff had no impairment-related physical limitations (Tr. 209).

On May 25, 2007, Roy Nevils, Ph.D., performed a consultative evaluation of Plaintiff (Tr. 217-22).[2] He considered application materials and office notes from Helping Hands Clinic

---

[2]*This report was not signed by Dr. Nevils (Tr. 221). According to the regulations, all consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. 20 C.F.R. § 404.1519n(e). The signature attests that the medical source doing the examination or testing was solely responsible for the report contents*

12

dated February 2007 (Tr. 217).   In addition to her physical conditions, Plaintiff indicated she

had been nervous all her life (Tr. 217).   She indicated she worried a lot, cried, and that it "seems

like it's getting worse" (Tr. 217).   When asked how often she was anxious, she replied "I don't

have it as bad everyday – just hits me at times.   I'm on Effexor for it, and if I run out of it I can

tell a big difference."   She also indicated that being by herself helped (Tr. 217).   She stated that

her anxiety worsened due to financial problems (Tr. 217).   Although she had never been to

counseling, she said she had three doctors tell her she should talk to somebody (Tr. 218).   She

indicated that, in 2004, when her father unexpectedly died after a surgery, she "sure could have

talked to somebody" (Tr. 218).   Plaintiff's mental status findings were within normal limits (Tr.

218).   Dr. Nevils concluded that Plaintiff's lifelong problems with anxiety had apparently

exacerbated in recent years due to her physical problems and anger about her father's death (Tr.

220).   Dr. Nevils diagnosed anxiety disorder, NOS, and assessed a Global Assessment of

Functioning (GAF) score of 80[3]  (Tr. 221).   He noted there were no limitations with respect to

memory, concentration, interpersonal relationships, or adaptability due to mental disorders (Tr.

220).   He opined that Plaintiff was capable of managing her own funds (Tr. 221).

---

and conclusions.  *Id.*  *Although Dr. Nevils' signature is not on the report, Dr. Nevils electronically signed a form attesting to the fact that he "personally conducted, or personally participated in conducting, the consultative examination"(Tr. 222).  Further, there is no allegation, nor any evidence, that Dr. Nevils did not perform the examinations or that he did not set forth the findings in the report.*

[3]*A GAF score of 71 to 80 indicates "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressor . . . ; no more than slight impairment in social, occupational, or school functioning . . . ."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV-TR) at 34.*

13

*Opinions of State Agency Medical Consultants*

On June 18, 2007, Mary Payne, M.D., a state agency physician, reviewed the evidence and opined that Plaintiff's physical impairments were not severe, singly or combined (Tr. 237-40). On January 23, 2008, Reeta Misra, M.D., another state agency physicians reviewed the record and also opined that Plaintiff's physical impairments were not severe, singly or combined (Tr. 255-58). She considered medical notes from 2003 through 2005, as well as Dr. Page's consultative examination (Tr. 258). She expressly opined, "impairment is nonsevere. No objective findings to support the allegations. Additional MER does not change the decision, affirms prior decision. Applied to now as well as for DLI period." (Tr. 258).

C.     Evidence Submitted After the ALJ's Decision

After the ALJ's decision, Plaintiff submitted evidence to the Agency's Appeals Council (Tr. 311-34). The evidence consists of records from Tennessee Heart Vascular Specialists, dated January 2009 (Tr. 311-12); Morristown Hamblen Hospital, dated January 2009 (Tr. 313-317); and Healthstar, dated August 2008 to February 2009 (Tr. 318-34).

Analysis

Substantial Evidence:

A Plaintiff seeking benefits based on disability bears the burden of proving that she is disabled within the meaning of the Social Security Act (Act). 20 C.F.R. § 426.912(a); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) ("The claimant has the ultimate burden to establish entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)"). In order to establish disability, Plaintiff must prove she had medically determinable physical or mental impairment that rendered her unable to engage in any substantial gainful activity for at least

14

a consecutive twelve month period. 42 U.S.C. § 423(d)(2)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). To be "disabled," the Act requires that a person's impairments must be of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations provide that disability claims are evaluated by way of a five-step sequential analysis. 20 C.F.R. § 404.1520. The five-step analysis is sequential because if, at any step, the Agency finds that a claimant is disabled or not disabled, the Agency does not review the claim any further. 20 C.F.R. § 404.1520(a)(4). At step one of the sequential analysis, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ found Plaintiff did not perform substantial gainful activity after her alleged disability onset date, December 31, 2000, through her date last insured, June 30, 2005 (Tr. 13). The ALJ decided Plaintiff's case at step two of the sequential evaluation (Tr. 13-16). At step two, if the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1509, or a combination of impairments that is severe and meets the duration requirement, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). If a claimant does not have a "severe" impairment, the Agency will deny her claim at step two without considering her age, education, and work experience. *Id.* Because Plaintiff's insured status ended on June 30, 2005, the ALJ's findings related to the time between December 31, 2000, her alleged onset date, and June 30, 2005, her date last insured (Tr. 13-16).

Judicial review of the Commissioner's decision is limited to determining whether his findings are supported by substantial evidence and whether he employed proper legal standards in reaching

his conclusion. *Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). For reasons set out below, I conclude substantial evidence supports the finding that Plaintiff did not have a "severe" impairment.

Under the Social Security Administration's regulations, an impairment or combination of impairments is "severe" if it significantly limits a claimant's physical or mental ability to perform basic work activities for at least twelve consecutive months. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your ability to do basic work activities."); SSR 96-3p. Basic work activities are those abilities and aptitudes necessary to perform most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, and carrying or handling. Additionally, basic work abilities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b). Where there is only a minimal effect on a claimant's physical or mental ability to perform basic work activities due to a slight abnormality or a combination of slight abnormalities, an impairment or combination of impairments is found not severe, and a finding of not disabled is appropriate at step two of the sequential evaluation. *See Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988); SSR 96-3p.

In this case the ALJ considered the evidence of record and found that Plaintiff had the following medically determinable impairments: COPD, hypertension, and obesity (Tr. 13).

However, based on the record, he concluded those impairments were not "severe," as they did not significantly limit Plaintiff's ability to perform basic work activities for at least a consecutive twelve-month period prior to her date last insured (Tr. 13). *See* 20 C.F.R. § 404.1520(c).

In making this finding, the ALJ considered a chest x-ray, from April 7, 2005, which showed signs of COPD; however, Plaintiff's lungs were clear of acute abnormalities (Tr. 15, 200). And, Dr. Page's consultive examination, in May 2007, indicated that Plaintiff's lungs were normal in all respects (Tr. 209). Thus, although Plaintiff complained of limitations from COPD, I conclude the record evidence supported the ALJ's finding that Plaintiff's COPD did not significantly limit Plaintiff's ability to perform basic work activities.

The ALJ also considered that Plaintiff's hypertension appeared to be controlled with medication (Tr. 15). According to the evidence, Plaintiff's vital signs often were stable (Tr.140, 164-65, 175-76). The ALJ considered that there was no evidence of end organ damage resulting from hypertension, and Plaintiff did not allege any dizziness or headaches associated with hypertension in her testimony (Tr. 15). This also provides support for the ALJ's finding that Plaintiff's hypertension was not severe.

The ALJ also noted Plaintiff's obesity (Tr. 15). However, Dr. Page opined that Plaintiff's obesity did not appear to negatively impact function or cause mechanical limitation, dyspnea, or fatigue and did not adversely affect Plaintiff's ability to walk, sit, stand, move about, turn, twist, bend, or lift (Tr. 209). Plaintiff's weight at the time of Dr. Page's examination was 258 pounds, several pounds more than what Plaintiff testified she weighed in 2005 (Tr. 22, 208). This evidence supported the ALJ's finding that obesity did not limit Plaintiff's ability to perform basic work activities prior to June 30, 2005.

17

Dr. Page considered Plaintiff's various allegations including back pain, cough, hypertension, and GERD (Tr. 206). His examination revealed largely normal findings (Tr. 209). Dr. Page opined that Plaintiff had no impairment-related physical limitations (Tr. 209).

The ALJ's step two finding is also supported by the opinions of two state agency physicians, who reviewed the record evidence and found that Plaintiff's physical impairments were not severe (Tr. 237-40, 255-58). In June 2007, Dr. Payne reviewed the evidence and opined that Plaintiff's physical impairments were not severe, either singly or combined (Tr. 237-40). Subsequently, in January 2008, Dr. Misra reviewed the record and also opined that Plaintiff's physical impairments were not severe, either singly or combined (Tr. 255-58). Dr. Misra expressly considered medical notes from 2003 through 2005, as well as Dr. Page's consultative examination (Tr. 258). She opined, "impairment is nonsevere. No objective findings to support the allegations. Additional MER does not change the decision, affirms prior decision. Applied to now as well as for DLI period" (Tr. 258). These two opinions also support the ALJ's decision because they were based on the record evidence, and because state agency physicians are "highly qualified physicians...who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i).

With regard to Plaintiff's allegations of disabling mental conditions, the ALJ considered Plaintiff's assertions of nervousness and depression, but found that there was no evidence of mental health treatment or significant mental limitations prior to the Plaintiff's date last insured (Tr. 15). Although Plaintiff was given medication for depression, the treatment notes prior to June 30, 2005 did not indicate limitations on Plaintiff's mental abilities (*See e.g.* 135, 139, 140, 148, 151, 153). The ALJ's conclusion is supported by the consultative evaluation of Dr. Nevils,

in May 2007, that Plaintiff's mental status findings were within normal limits (Tr. 218). Dr. Nevils concluded that Plaintiff's lifelong problems with anxiety had apparently exacerbated in recent years due to her physical problems and anger about her father's death (Tr. 220). He diagnosed an anxiety disorder and indicated a GAF score of 80, indicating no more than slight impairment in social or occupational functioning. *DSM-IV-TR* at 34. (Tr. 221). Dr. Nevils opined that Plaintiff had no limitations with respect to memory, concentration, interpersonal relationships, or adaptability due to mental disorders (Tr. 220). In addition, he concluded she was capable of managing her own funds (Tr. 221). Dr. Nevils' opinion supported the ALJ's finding that Plaintiff's mental conditions did not significantly limit her ability to perform basic work activities prior to June 30, 2005.

In addition to considering the medical evidence regarding Plaintiff's mental conditions, the ALJ considered that, despite her allegations of anxiety and depression, Plaintiff continued to carry out activities of daily living; interact with the public while shopping and attending church; maintain attention and concentration to sew, follow television programs, and church sermons; and handle finances without significant mental limitations (Tr. 16, 23-24, 88-92). Based on these activities, the ALJ concluded Plaintiff's mental conditions resulted in no more than mild restrictions in activities of daily living, social functioning, and concentration, persistence, and pace since her alleged onset date (Tr. 16). Accordingly, he concluded her mental conditions were not severe, within the meaning of the regulations.

<u>The ALJ's Credibility Finding</u>

Plaintiffs contends the ALJ erred in assessing her credibility (Doc. 10, Plaintiff's Brief at 12-15). The ALJ considered Plaintiff's allegations of complete disability based on various

conditions, including swelling in her feet and ankles, numbness in her feet, shortness of breath, back and leg pain, nervousness, and depression, but did not give them much weight based on the record evidence (Tr. 14-16). Neither the objective medical record nor the medical opinions supported Plaintiff's claims of limitation. As discussed above, the ALJ considered the evidence of COPD and hypertension, but found that the evidence did not support Plaintiff's claims of limitation (Tr. 15). *See* 20 C.F.R. § 416.929(c)(2) (ALJ may consider objective evidence in evaluating the claimant's symptoms); SSR 96-7p. The ALJ also considered the medical opinions of Dr. Page, Dr. Nevils, Dr. Payne, and Dr. Misra, which did not support Plaintiff's allegations of limitations (Tr. 15).

In addition to considering the medical evidence, the ALJ considered Plaintiff's wide array of activities (Tr. 14, 16). *See* 20 C.F.R. § 416.929(c)(3)(i) (ALJ may consider a claimant's activities in evaluating symptoms). Plaintiff testified that she drove, went grocery shopping, attended church three times per week, was able to tend to a garden, and was currently "putting up food for the winter" (Tr. 23-24, 30, 33, 35). In addition, Plaintiff reported that she cared for her personal needs, washed dishes by hand, did laundry, did housekeeping, prepared meals, watched television, fed birds, and handled finances (Tr. 88-92). The ALJ concluded that Plaintiff's ability to perform these activities was a basis to question the extent of her alleged limitations.

Based on the medical opinions before him, I conclude there was substantial evidence to support the ALJ's finding that Plaintiff was not credible in the characterizing her limitations.

In reviewing the ALJ's decision, deference is due the ALJ's credibility determinations. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff argues that the ALJ should have ordered more tests and examinations, in order to

properly develop the record (Doc. 10, Plaintiff's Brief at 15). In this case, the ALJ had to determine whether Plaintiff was under a disability at any time from December 31, 2000 through June 30, 2005, Plaintiff's date last insured. The record contained both a physical and mental consultative evaluation performed after June 30, 2005 (Tr. 206-22). These reports supported the ALJ's finding that Plaintiff did not have a severe physical or mental impairment as of her date last insured (Tr. 206-22). Thus, to the extent that Plaintiff's record may have been sparse during the period prior to June 30, 2005, based on Plaintiff's lack of insurance, the ALJ had the benefit of these additional consultative evaluations and the opinions of two non-examining State Agency Physicians. Under these circumstances I concluded the ALJ was not required to order more tests or evaluations.

Plaintiff argues this Court should reverse the ALJ's decision and conclude that she met or medically equaled a listed impairment (step three), and she lists nine specific listings (Doc. 10, Plaintiff's Brief at 16). However, the ALJ was not required to continue the sequential evaluation beyond step two once he found Plaintiff did not have a severe impairment. 20 C.F.R. § 404.1520(c). In *Gist v. Secretary of Health and Human Services*, 736 F.2d 352 (6th Cir. 1984), the Court recognized that there was no need for the Commissioner to consider other factors after finding the claimant not disabled at step two. *See Gist*, 736 F.2d at 357-58. Thus, the ALJ was not required to evaluate Plaintiff's claim at step three of the sequential evaluation.

<u>Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g)</u>

After the ALJ's decision, Plaintiff submitted evidence to the Appeals Council which consisted of medical records from Tennessee Heart Vascular Specialists, dated January 2009; Morristown Hamblen Hospital, dated January 2009; and Healthstar, dated August 2008 to

21

February 2009 (Tr. 311-34).

The Court may not consider evidence submitted after the ALJ issued his decision in its substantial evidence review of the agency's final decision, but only for the purpose of determining whether remand is appropriate under sentence six of 42 U.S.C. § 405(g).  *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).   Plaintiff refers to a record from Healthstar in her statement of facts as generally supporting her claim of intermittent claudication in her leg (Doc. 10, Plaintiff's Brief at 2, referring to Tr. 312).

A sentence six remand will be made only upon a showing that the evidence is new, material, and that there is good cause for failure to incorporate the evidence into the record at the administrative hearing.  *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt*, 974 F.2d at 685. Evidence is new only if it was not in existence or available to Plaintiff at the time of the administrative proceeding.  *Id.*   In this case the medical evidence is new in that it did not exist at the time of the hearing.   Additional evidence is material only if there is a reasonable probability that the ALJ would have reached a different disposition of the disability claim if presented with the evidence.  *Id.*   In this case Plaintiff's date last insured was June 30, 2005 so the evidence would have to be material to the period of time prior to that date.   The additional evidence was from the period of August 2008 to February of 2009.   A subsequent deterioration or change in condition is not material; rather, if a claimant's condition seriously degenerates, the appropriate remedy would be to initiate a new claim for benefits as of the date the condition aggravated to the point of constituting a disabling impairment. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 712 (6th Cir. 1988). Plaintiff fails to show the new evidence in this case is material because it does not relate to the period on or before Plaintiff's date last insured. *See Wyatt v. Sec'y*

22

*of HHS*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.").   I conclude there was no reasonable probability the ALJ would have changed his decision that Plaintiff was not disabled if he had the opportunity to review the evidence submitted with Plaintiff's motion for remand.   See *Foster v. Halter*, 279 F.3d 348, 358 (6th Cir. 2001) (evidence not material where plaintiff "has not established that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with this evidence.").   For those reasons, I decline to recommend a sentence six remand.   I also conclude the Commissioner was correct in arguing that Plaintiff does not refer to any of the additional evidence to argue that she is entitled to a remand pursuant to sentence six of 42 U.S.C. § 405(g).   Accordingly, she has waived this argument.   *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has not only failed to make a showing of good cause, but also has failed to even cite this relevant section or argue a remand is appropriate.").

## Conclusion

For the reasons stated herein, since there is substantial evidence to support the conclusion of the ALJ, I RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 14) be GRANTED, the Plaintiff's Motion for Judgment on the Pleadings or for Remand (Doc. 9) be DENIED, and this case be DISMISSED.[4]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

24

Dated:   January 3, 2012            s/William B. Mitchell Carter
                    UNITED STATES MAGISTRATE JUDGE